UNITED STATES COURT OF INTERNATIONAL TRADE

```
------------------------------------------------------------ X
                                                             :
ACCOLADE USA INC.,                                           :
                                                             :
                         Plaintiff,                          :
                                                             :
            v.                                               :   Court No. 16-00264
                                                             :
UNITED STATES,                                               :
                                                             :
                         Defendant.                          :
                                                             :
------------------------------------------------------------ X
```

## COMPLAINT

Plaintiff, Accolade USA Inc., by its undersigned attorneys, hereby states and alleges as follows:

## CAUSE OF ACTION

1. This action is brought to challenge the denial of plaintiff's protests contesting the appraised value of merchandise imported into the United States, at the Port of Buffalo, New York.

## JURISDICTION

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1581(a).

3. All liquidated duties, taxes and fees were paid by plaintiff prior to the commencement of this action.

## PARTIES

4. Plaintiff, Accolade USA Inc., the importer of record of the merchandise, which is the subject of this action, is the real party in interest.

5. Defendant, United States, is the Federal defendant, and undertook the actions complained of here through its agency, the Department of Homeland Security, U.S. Customs and Border Protection (CBP).

## STATEMENT OF FACTS

6. Plaintiff is an importer of apparel and accessory products into the United States (hereinafter "Accolade USA").

7. Accolade Group Inc. a corporation existing under the laws of Canada (hereinafter "AGI"), is headquartered office in Richmond Hill, Ontario, and is engaged in the importation, processing and wholesaling of apparel and other miscellaneous goods in Canada.

8. Accolade USA and AGI have common ownership, and are considered to be "related" parties for purposes of Customs valuation pursuant to Section 402 (g)(1) of the Tariff Act of 1930, as amended. (19 U.S.C. §1401a(g)(1)).

9. All of the merchandise which is the subject of this action was purchased by AGI from various unrelated vendors in Asia and elsewhere, for exportation to Canada.

10. Upon arrival in Canada, the merchandise was owned by AGI and was stored in warehouses operated by AGI in and around Richmond Hills, Ontario. AGI screen prints or embroiders certain goods, then sells processed or 'blank' merchandise from its inventory for delivery in Canada, and other global locations.

11. Accolade USA sales personnel are assigned territories within the United States, and are assigned responsibility for selling Accolade USA merchandise. Accolade USA sales representatives visit customers within their respective territories.

12. Accolade USA's sales representatives employ price lists setting out suggested wholesale prices for AGI merchandise. The list prices are established by Accolade USA personnel

located in the United States. Accolade USA's sales representatives have authority to negotiate discounts or departures from list prices, in order to make sales of merchandise to customers.

13. Accolade USA is not "related" to any of its customers, as that term is defined in Section 402(g) of the Tariff Act of 1930, as amended (19 U.S.C. §1401a(g)).

14. Accolade USA fulfills its orders from United States customers with merchandise purchased from AGI.

15. When purchasing merchandise from AGI, Accolade USA places a purchase order with AGI. The terms of the purchase order provide for delivery of the goods to Accolade USA indicate "Our Freight – FOB Toronto."

16. When AGI issues an invoice to Accolade USA, the delivery terms on the invoice are "Your Freight."

17. AGI charges Accolade USA an intercompany price based upon the Canadian price plus freight, embroidery or screen-printing costs, and a mark-up of 15%.

18. Accolade USA contracts with a land carrier to pick up the merchandise at AGI's warehouse in Richmond Hill, Ontario, and transport those goods to the United States.

19. When merchandise is loaded onto the carrier's truck in Richmond Hill, Ontario, Accolade USA has legal title and risk of loss relative to the merchandise, and is responsible for transportation costs.

20. Accolade USA tenders the agreed-upon price for the merchandise to AGI.

21. Accolade USA is the owner of the merchandise at the time it is imported into the United States, and makes entry of the goods with Customs, acting as U.S. importer of record.

22. After the goods are imported into the United States, the importing truck carrier delivers the goods to a warehouse in Cheektowaga, New York, operated by United Parcel Service, Inc.

("UPS"), a carrier, freight forwarder and third-party logistics provider engaged by Accolade USA.

23. UPS unloads the trucks in Cheektowaga, and separates the merchandise on the truck into separate lots which Accolade USA sells to customers in the United States.

24. At Accolade USA's direction, UPS ships the goods to Accolade USA's customers.

25. After UPS ships the goods to Accolade USA's customers, Accolade USA generates an invoice to its customers. The invoice shows a "freight prepaid" price, consisting of the F.O.B. Buffalo, New York price negotiated with the customer, plus the cost of freight from Buffalo, New York, to the customer's location.

26. Accolade USA's customers pay Accolade USA for the merchandise by check or credit card. The payments are typically routed to Accolade USA's bank accounts. Check payments are deposited in a United States dollar-denominated account maintained by Accolade USA at a bank in Canada.

27. When Accolade USA customers return goods they have ordered, the goods are delivered to the Accolade USA contracted warehouse, operated by UPS, in Cheektowaga, New York.

28. CBP appraised the goods at liquidation at the values based upon Accolade USA's resale value to its unrelated U.S. customers.

29. Plaintiff timely protested the appraised value of the merchandise in liquidation, alleging that the goods were properly subject to appraisement on the basis of transaction value, pursuant to 19 U.S.C. §1401a(b), or, in the alternative, on the basis of deductive value pursuant to 19 U.S.C. §1401a(d).

30. CBP denied plaintiff's protests, whereupon plaintiff timely commenced the instant action to challenge the denial of its protests.

**COUNT I – RELATED PARTY TRANSACTION VALUE UNDER 19 U.S.C. §1401(a)(b)**

31. Paragraphs 1 through 30 are repeated and incorporated by reference as though fully set forth herein.

32. Section 402(a) of the Tariff Act of 1930 (19 U.S.C. §1401a(a)) provides that merchandise imported into the United States is to be appraised, for duty assessment purposes, according to the first applicable basis of appraisement in hierarchical order. Section 402(a) of the Tariff Act, which is the best evidence of its contents, provides in pertinent part as follows:

> **(a) Generally**
>
> (1) Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:
>
> > (A) The transaction value provided for under subsection (b) of this section.
> >
> > (B) The transaction value of identical merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (A) cannot be determined, or can be determined but cannot be used by reason of subsection (b)(2) of this section.
> >
> > (C) The transaction value of similar merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (B) cannot be determined.
> >
> > (D) The deductive value provided for under subsection (d) of this section, if the value referred to in subparagraph (c) cannot be determined and if the importer does not request alternative valuation under paragraph (2).
> >
> > (E) The computed value provided for under subsection (e) of this section, if the value referred to in subparagraph (D) cannot be determined.
> >
> > (F) The value provided for under subsection (f) of this section, if the value referred to in subparagraph (E) cannot be determined.

33. The principal and preferred basis of appraisement for imported merchandise is its

transaction value, as prescribed in Section 402(b) of the Act, which is the best evidence of its contents and which describes transaction value as follows:

### (b) Transaction value of imported merchandise

(1) The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States, plus amounts equal to -

(A) the packing costs incurred by the buyer with respect to the imported merchandise;

(B) any selling commission incurred by the buyer with respect to the imported merchandise;

(C) the value, apportioned as appropriate, of any assist;

(D) any royalty or license fee related to the imported merchandise that the buyer is required to pay, directly or indirectly, as a condition of the sale of the imported merchandise for exportation to the United States; and

(E) the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue, directly or indirectly, to the seller.

The price actually paid or payable for imported merchandise shall be increased by the amounts attributable to the items (and no others) described in subparagraphs (A) through (E) only to the extent that each such amount (i) is not otherwise included within the price actually paid or payable; and (ii) is based on sufficient information. If sufficient information is not available, for any reason, with respect to any amount referred to in the preceding sentence, the transaction value of the imported merchandise concerned shall be treated, for purposes of this section, as one that cannot be determined.

34. In order for transaction value to be apply, there must be a "sale" of the merchandise, and the sale must be on terms showing it to be "for exportation to the United States."

35. A "sale" for Customs valuation purposes, is transfer of title to merchandise for consideration, *see J.L. Wood v. United States*, 62 C.C.P.A. 25, 505 F.2d 1400 (1974).

36. The only sale of the merchandise at bar for exportation to the United States is the sale from AGI to Accolade USA, which is made on an FOB Richmond Hill basis.

37. AGI Canada and Accolade USA are "related" parties for purposes of Customs valuation, as defined in 19 U.S.C. 1401a (g).

38. A related party price is acceptable as the basis of transaction value under 19 U.S.C. §1401a(b)(2)(B) if the relationship between buyer and seller does not influence the "price actually paid or payable", or if the price closely approximates any one of certain statutory "test values." Section 402(b)(2)(B) of the Tariff Act of 1930, as amended, which is the best evidence of itscontents, provides:

> (B) The transaction value between a related buyer and seller is acceptable for the purposes of this subsection if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported merchandise closely approximates -
>
> (i) the transaction value of identical merchandise, orof similar merchandise, in sales to unrelated buyers inthe United States; or
>
> (ii) the deductive value or computed value for identical merchandise or similar merchandise;
>
> but only if each value referred to in clause (I) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

39. There is a bona fide sale of the merchandise from AGI to Accolade USA "for exportation to the United States."

40. CBP erred in liquidating plaintiff's imported merchandise according to the price at which Accolade USA sells the imported merchandise to unrelated customers in the United States because all sales of goods from Accolade USA to its United States customers are purely domestic transactions, rather than sales of merchandise "for export to the United States."

41. On information and belief, CBP posited a fictitious sale of the merchandise "for exportation to the United States" from AGI Canada to unrelated customers of Accolade USA. No such sale occurred, and there is no contractual or other privity between AGI and any of the customers of Accolade USA.

42. The imported merchandise is properly subject to appraisement according to transaction value, as determined under 19 U.S.C. § 1401a(b), according to the prices at which the goods are sold by AGI to Accolade USA for export to the United States.

**COUNT II (ALTERNATIVE) – DEDUCTIVE VALUE UNDER 19 U.S.C. §1401a(d))**

43. Paragraphs 1 through 42 are repeated and incorporated by reference as though fully setforth herein.

44. In the event the Court holds that the subject merchandise is not subject to appraisement under transaction value on the basis of the sale from AGI Canada to Accolade USA, another basis of appraisement for the merchandise must be found.

45. After transaction value as specified in 19 U.S.C. §1401a(b), the next basis of appraisement, in hierarchical order, is the transaction value of identical or similar merchandise, as specified in 19 U.S.C. §1401a(c).

46. However, there are no sales by AGI Canada of identical or similar merchandise to unrelated customers in the United States at or about the time of importation of the merchandise concerned in this action. Accordingly, no transaction value of identical or similar merchandise can be determined for the merchandise subject to this action.

47. Where there is no transaction value of imported merchandise, or of identical or similar merchandise, the next basis of appraisement, in hierarchical order, is "deductive value" as specified

in 19 U.S.C. §1401a(d).

48. Plaintiff has made no election pursuant to 19 U.S.C. § 1401a (a)(2) to have computed value applied prior to deductive value in the statutory appraisement hierarchy.

49. Deductive value is defined in Section 402(d) of the Tariff Act of 1930, as amended (19 U.S.C. §1401a(d)), which is the best evidence of its contents, as follows:

> (2)(A) The deductive value of the merchandise being appraised is whichever of the following prices (as adjusted under paragraph (3)) is appropriate depending upon when and in what condition the merchandise concerned is sold in the United States:
>
> (i) If the merchandise concerned is sold in the condition as imported at or about the date of importation of the merchandise being appraised, the price is the unit price at which the merchandise concerned is sold in the greatest aggregate quantity at or about such date.
>
> (ii) If the merchandise concerned is sold in the condition as imported but not sold at or about the date of importation of the merchandise being appraised, the price is the unit price at which the merchandise concerned is sold in the greatest aggregate quantity after the date of importation of the merchandise being appraised but before the close of the 90th day after the date of such importation.
>
> (iii) If the merchandise concerned was not sold in the condition as imported and not sold before the close of the 90th day after the dateof importation of the merchandise being appraised, the price is the unit price at which the merchandise being appraised, after further processing, is sold in the greatest aggregate quantity before the 180th day after the date of such importation. This clause shall apply to appraisement of merchandise only if the importer so elects and notifies the customs officer concerned of that election within such time as shall be prescribed by the Secretary.
>
> (B) For purposes of subparagraph (A), the unit price at which merchandise is sold in the greatest aggregate quantity is the unit price at which such merchandise is sold to unrelated persons, at the first commercial level after importation (in cases to which subparagraph (A)(i) or (ii) applies) or after further processing (in

cases to which subparagraph (A)(iii) applies) at which such sales take place, in a total volume that is (i) greater than the total volume sold at any other unit price, and (ii) sufficient to establish the unit price.

(3)(A) the price determined under paragraph (2) shall be reduced by an amount equal to –

(i) any commission usually paid or agreed to be paid, or the addition usually made for profit and general expenses, in connection with sales in the United States of imported merchandise that is of the same class or kind, regardless of the country of exportation, as the merchandise concerned;

(ii) the actual costs and associated costs of transportation and insurance incurred with respect to international shipments of the merchandise concerned from the country of exportation to the United States;

(iii) the usual costs and associated costs of transportation and insurance incurred with respect to shipments of such merchandise from the place of importation to the place of delivery in the UnitedStates, if such costs are not included as a general expense under clause (I);

(iv) the customs duties and other Federal taxes currently payable on the merchandise concerned by reason of its importation, and any Federal excise tax on, or measured by the value of, such merchandise for which vendors in the United States are ordinarily liable; and

(v) (but only in the case of a price determined under paragraph (2)(A)(iii)) the value added by the processing of the merchandise after importation to the extent that the value is based on sufficient information relating to cost of such processing.

50. A deductive value can be determined for all of plaintiff's imported merchandise, based upon the price at which each imported product is first sold to an unrelated customer in the United States, in the greatest aggregate quantities, with deductions made therefrom as described in the statute.

51. In the event this Court determines that the subject merchandise cannot be appraised

on the basis of transaction value, it must be appraised on the basis of deductive value pursuant to 19 U.S.C. §1401a(d).

## COUNT III

52. Paragraphs 1 through 51 are repeated and incorporated by reference as though fully setforth herein.

53. Section 504(a) of the Tariff Act of 1930, as amended [19 U.S.C. §1504(a)], which is the best evidence of its contents requires that entries be liquidated within one year after the date of entry, and that, if not so liquidated, the entries are deemed liquidated at the rate andamount of duty set forth in the entry.

54. Under Section 504 (b) of the Tariff Act, CBP may extend the period for liquidating an entry if a request is made therefor by the importer of record, or if CBP requires additional information in order to liquidate the entry.

55. Extensions of liquidation are normally issued in increments of one year.

56. CBP issued one extensions of liquidation for certain entries subject to this action.

57. Upon information and belief, CBP did not extend or liquidate all entries subject to this action within one year of entry, or the last extension of liquidation issued by the agency.

58. Upon information and belief, CBP extended liquidation of certain entries more than one year after subject entries were filed, or more than one year after a previous extension of liquidation had occurred.

59. Any extensions of liquidation which occurred more than one year after liquidation or a previous extension of liquidation are without legal authority, and are therefore null and void.

60. Any liquidation which occurred more than one year after entry or extension of a previous extension of liquidation is without legal authority, and is therefore null and void, and

should be liquidated at the value as entered.

## PRAYER FOR RELIEF

WHEREAS, for the reasons set forth herein, plaintiff prays that this Court grant judgment in its favor, directing defendant to reappraise plaintiff'smerchandise, reliquidate its entries, and refund to plaintiff all excessive duties, plus interest as provided by law; and providing plaintiff with such further and additional relief as this Court maydeem just, including but not limited to costs of suit and attorney's fees.

                                                 Respectfully submitted,

                                                 */s/ Patrick D. Gill*
                                                 Patrick D. Gill
                                                 Robert D. DeCamp
                                                 Sandler, Travis & Rosenberg, P.A.
                                                 Attorneys for Plaintiff
                                                 675 Third Avenue
                                                 Suite 1805-06
                                                 New York, New York 10017
                                                 Tel: (212) 549 - 0156

October 29, 2021